UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JERRY RODGER PHELPS,

      Plaintiff,

v.                                                                        Case No. 8:20-cv-1572-CPT

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,[1]

      Defendant.
_____/

**O R D E R**

     The Plaintiff seeks judicial review of the Commissioner's denial of his claim for

Disability Insurance Benefits (DIB).    For the reasons discussed below, the

Commissioner's decision is affirmed.

I.

     The Plaintiff was born in 1972, has a bachelor's degree, and has past relevant

work experience as a drill operator, general laborer, and heavy equipment specialist.

(R. 50–51, 112, 159).   In November 2017, the Plaintiff applied for DIB, alleging

disability as of August 2017 due to gout, arthritis, diabetes, depression, kidney stone

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021.  Pursuant to
Federal Rule of Civil Procedure 25(d), Ms. Kijakazi is substituted for Commissioner Andrew M. Saul
as the Defendant in this suit.

disease, and Diffuse Idiopathic Skeletal Hypertosis (DISH).  (R. 55–56).  The Social Security Administration (SSA) denied the Plaintiff's application both initially and on reconsideration.  (R. 65, 81).

At the Plaintiff's request, an Administrative Law Judge (ALJ) conducted a hearing on the matter in August 2019.  (R. 29–54).  The Plaintiff was represented by counsel at that hearing and testified on his own behalf.  (R. 29, 34–48).  A vocational expert (VE) also testified.  (R. 49–54).

In a decision issued in September 2019, the ALJ determined that the Plaintiff (1) had not engaged in any substantial gainful activity since his alleged onset date in August 2017; (2) had the severe impairments of gout, obesity, DISH, diabetes mellitus, arthritis/joint pain, degenerative disc disease, and chronic kidney disease with a history of recurrent kidney stones; (3) did not, however, have an impairment or combination of impairments that met or medically equaled any of the listings; (4) had the residual functional capacity (RFC) to perform a restricted range of light work; and (5) based on the VE's testimony, could not engage in his past relevant work but was capable of making a successful adjustment to other jobs that exist in significant numbers in the national economy.  (R. 15–24).  Based on these findings, the ALJ concluded that the Plaintiff was not disabled.  *Id.*

The Appeals Council denied the Plaintiff's request for review.  (R. 1–4). Accordingly, the ALJ's decision became the final decision of the Commissioner.

II.

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a).[2] A physical or mental impairment under the Act "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

To determine whether a claimant is disabled, the Social Security Regulations (Regulations) prescribe "a five-step, sequential evaluation process." *Carter v. Comm'r of Soc. Sec.*, 726 F. App'x 737, 739 (11th Cir. 2018) (per curiam) (citing 20 C.F.R. § 404.1520(a)(4)).[3] Under this process, an ALJ must assess whether the claimant: (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) has the RFC to engage in his past relevant work; and (5) can perform other jobs in the national economy given his RFC, age, education, and work experience. *Id.* (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). Although the claimant has the burden of proof through step four, the burden temporarily shifts to the Commissioner at step five.

---

[2] Unless otherwise indicated, citations to the Code of Federal Regulations are to the version in effect at the time of the ALJ's decision.

[3] Unpublished opinions are not considered binding precedent but may be cited as persuasive authority. 11th Cir. R. 36-2.

*Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1278–79 (11th Cir. 2020) (citation omitted); *Sampson v. Comm'r of Soc. Sec.*, 694 F. App'x 727, 734 (11th Cir. 2017) (per curiam) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).   If the Commissioner carries that burden, the claimant must then prove he cannot engage in the work identified by the Commissioner.   *Goode*, 966 F.3d at 1279.   In the end, "'the overall burden of demonstrating the existence of a disability . . . rests with the claimant.'" *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).

A claimant who does not prevail at the administrative level may seek judicial review in federal court provided the Commissioner has issued a final decision on the matter after a hearing.   42 U.S.C. § 405(g).   Judicial review is limited to determining whether the Commissioner applied the proper legal standards and whether the decision is supported by substantial evidence.   *Id.*; *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1305 n.2 (11th Cir. 2018) (per curiam) (citation omitted).   Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."   *Biestek v. Berryhill*, 587 U.S. ___, 139 S. Ct. 1148, 1154 (2019) (internal quotation marks and citations omitted).   In evaluating whether substantial evidence supports the Commissioner's decision, the Court "may not decide the facts anew, make credibility determinations, or re-weigh the evidence."   *Carter*, 726 F. App'x at 739 (citing *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam)).   While courts will defer to the Commissioner's

4

factual findings, they afford no such deference to her legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted).

### III.

The Plaintiff raises three claims on appeal: (1) the ALJ did not afford appropriate weight to the opinion of one of the Plaintiff's physicians, Dr. Audwin Nelson, who treated the Plaintiff for a number of years; (2) the ALJ did not properly assess the Plaintiff's subjective complaints of pain and other symptoms; and (3) the Commissioner did not satisfy her burden of identifying other jobs available to the Plaintiff in the national economy. The Commissioner counters that the ALJ correctly followed the governing law in rendering his disability determination and that his decision is adequately supported. Upon careful review of the parties' submissions and the pertinent portions of the record, the Court finds the Plaintiff's claims to be without merit.

### A.

As noted above, at step four of the sequential evaluation process, an ALJ must determine the claimant's RFC and his ability to perform his past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545. To do so, an ALJ "must consider all medical opinions in a claimant's case record, together with other relevant evidence." *McClurkin v. Soc. Sec. Admin.*, 625 F. App'x 960, 962 (11th Cir. 2015) (per curiam) (citing 20 C.F.R. § 404.1527(b)). Medical opinions are statements from physicians or acceptable medical sources concerning what a claimant may still be able to do despite his impairments; whether the claimant is limited in his ability to perform various work

activities; and whether he can see, hear, or use his other senses or "adapt to environmental conditions, such as temperature extremes or fumes." 20 C.F.R. § 404.1513(a)(2).

The Regulations governing the evaluation of medical opinions were amended for disability applications, like this one, filed on or after March 27, 2017. 20 C.F.R. § 404.1520c; *Simon v. Comm'r, Soc. Sec. Admin.*, 7 F.4th 1094, 1104 n.4 (11th Cir. 2021). The ALJ now determines the persuasiveness of a medical opinion instead of generally basing its weight on the opinion's source. *Compare* 20 C.F.R. § 404.1527 *with* 20 C.F.R. § 404.1520c. Consequently, the "treating source rule," which mandated that a treating physician's opinion be given significant deference unless there was good cause for discounting it, was eliminated. *Yanes v. Comm'r, Soc. Sec. Admin.*, ___ F. App'x ___, 2021 WL 2982084, at *5 n.9 (11th Cir. July 15, 2021) (per curiam) ("In 2017, the SSA amended its regulations and removed the 'controlling weight' requirement for all applications filed after March 27, 2017."); Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5853, 2017 WL 168819 (Jan. 18, 2017).

In evaluating the persuasiveness of a medical opinion under the amended Regulations, an ALJ considers the following factors: (1) supportability; (2) consistency; (3) the source's relationship with the claimant; (4) the source's area of specialization; and (5) any other relevant factors "that tend to support or contradict a medical opinion," such as whether the source is familiar with the other record evidence or has "an understanding of [the SSA's] disability program's policies and evidentiary

6

requirements." 20 C.F.R. § 404.1520c(c); *Nixon v. Kijakazi*, 2021 WL 4146295, at *3 (M.D. Fla. Sept. 13, 2021) (citation omitted).

Of these factors, supportability and consistency are the most important. 20 C.F.R. § 404.1520c(b)(2); *Nixon*, 2021 WL 4146295, at *3 (citation omitted). Supportability relates to the extent to which a medical source has articulated record evidence bolstering his own opinion, while consistency deals with whether a medical source's opinion conforms to other evidence in the record. 20 C.F.R. § 404.1520c(b)(1)–(2), (c)(1)–(2); *Barber v. Comm'r of Soc. Sec.*, 2021 WL 3857562, at *3 (M.D. Fla. Aug. 30, 2021) (citation omitted). The amended Regulations require an ALJ to assess supportability and consistency but do not obligate him to explain how he evaluated the other three factors. 20 C.F.R. § 404.1520c(b)(2); *Freyhagen v. Comm'r of Soc. Sec. Admin.*, 2019 WL 4686800, at *2 (M.D. Fla. Sept. 26, 2019) (citation omitted).

The amended Regulations also provide that when a medical source offers multiple opinions, an ALJ is not mandated to look at each opinion individually but instead need only "articulate how [he] considered the medical opinions . . . from that medical source together in a single analysis using the factors listed [above], as appropriate." 20 C.F.R. § 404.1520c(b)(1); *Nixon*, 2021 WL 4146295, *4 (citation omitted). Importantly, the "new regulations are not inconsistent with Eleventh Circuit precedent holding that 'the ALJ may reject any medical opinion if the evidence supports a contrary finding.'" *Freyhagen*, 2019 WL 4686800, at *2 (citing *Wainwright*

*v. Comm'r of Soc. Sec. Admin.*, 2007 WL 708971, at *2 (11th Cir. Mar. 9, 2007) (per curiam); *Syrock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam)).

In this case, Dr. Nelson began caring for the Plaintiff in December 2017. (R. 551). His physical examinations during his treatment of the Plaintiff included findings of strength, muscle tone, normal sensation, and range of motion. (R. 513, 517, 587, 590, 594, 597, 602, 609–10, 614). Of relevance here, Dr. Nelson observed in August 2018 that the Plaintiff was active but not formally exercising and, in November of the same year, that the Plaintiff "exercise[d] regularly," including by "walking [three] miles [two to three] days a week." (R. 608, 612).

In 2019, Dr. Nelson completed a Medical Source Statement in which he summarized the Plaintiff's conditions. (R. 551). Dr. Nelson opined in this statement that the Plaintiff was limited in his ability to walk, sit, and stand for certain periods of time, including not being able to walk more than two city blocks, not being able to sit for more than forty-five minutes without a ten-minute break, and not being able to stand for more than ten minutes. (R. 551–53).

In addition to the care he received from Dr. Nelson, the Plaintiff was the subject of a consultative examination performed by Dr. Roger Arumugam in December 2017. Dr. Arumugam found that the Plaintiff had no functional impairment, noting that he walked and mounted the examination table without assistance and had a normal gait, no muscle wasting, 5/5 motor strength, and no gait, motor, spinal, sensory, or bilateral handicap deficits. (R. 21–22, 475–76).

8

After evaluating the restrictions expressed by Dr. Nelson in his Medical Source Statement, the ALJ ultimately determined they had no persuasive value, finding that they were at odds with Dr. Nelson's own records, the results of Dr. Arumugan's examination of the Plaintiff, and even the Plaintiff's admitted daily activities, which the Plaintiff documented in a function report he completed in connection with his disability application. (R. 22, 189–93). As the ALJ reasoned in his decision:

> The severity of [Dr. Nelson's identified limitations] is not consistent with Dr. Nelson's own examination findings, which generally show no abnormality, or the vast majority of those in evidence, including Dr. Arumugam's consultative examination. Moreover, the inability to even stand, walk, and sit [four] hours during a workday is not consistent with the claimant's own reported activities, which include preparing simple meals, laundry, vacuuming, sweeping, weed whacking, and playing shuffleboard multiple times per week.

(R. 22).

Citing the prior Regulations, the Plaintiff now argues that the ALJ's assessment of the restrictions imposed by Dr. Nelson constituted error because the Plaintiff's daily activities do not conflict with those limitations and, even if they did, the ALJ relied too heavily on any such discrepancy. (Doc. 33 at 12). The Plaintiff also maintains that the ALJ erred by not considering all the requisite factors in determining the weight to be accorded to Dr. Nelson's opinions. *Id.* These contentions do not survive scrutiny.

To begin, the Plaintiff's efforts to show that Dr. Nelson's limitations are not contradicted by the Plaintiff's reported daily activities are fatally flawed as a legal

matter.  The Plaintiff's argument is essentially that, although Dr. Nelson did remark in a 2018 treatment note that the Plaintiff exercised regularly (R. 612), that notation—according to the Plaintiff's testimony at the hearing—was incorrect.  (R. 40–41).  And since this notation was a mistake, the Plaintiff asserts, then Dr. Nelson's treatment note does not conflict with his proposed restrictions.

The problem with the Plaintiff's argument is that he is effectively challenging the weight the ALJ assigned to Dr. Nelson's 2018 treatment note and the Plaintiff's testimony regarding same.  Indeed, the ALJ specifically referenced both of these evidentiary items in his decision before reaching his disability determination.  As explained previously, however, it is not the role of the Court to "reweigh the importance attributed to the medical evidence" by the ALJ.  *Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 833 (11th Cir. 2011) (per curiam) (citing *Moore*, 405 F.3d at 1211).  Only a finding that an ALJ's decision is not buttressed by substantial evidence is sufficient for a reviewing court to disturb the ALJ's findings.[4]  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004) (per curiam) (citation omitted).

The Plaintiff's contention that the ALJ's rejection of Dr. Nelson's limitations is predicated too much on any inconsistency between those restrictions and the Plaintiff's

---

[4] The Plaintiff does not raise such a claim here and therefore has waived it.  *See Sanchez v. Comm'r of Soc. Sec.*, 507 F. App'x 855, 856 n.1 (11th Cir. 2013) (per curiam) (citations omitted); *Simpson v. Comm'r of Soc. Sec.*, 423 F. App'x. 882, 885 (11th Cir. 2011) (per curiam) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)); *Sumlin v. Saul*, 2020 WL 7232240, at *4 n.6 (M.D. Fla. Nov. 23, 2020) (citing *Simpson*, 423 F. App'x at 885), *report and recommendation adopted*, 2020 WL 7229746 (M.D. Fla. Dec. 8, 2020).  Even if the Plaintiff had raised the claim, there is substantial evidence to buttress the ALJ's weighing of this evidence, as discussed *infra*.

daily activities also fails.  (Doc. 33 at 12).  Contrary to the Plaintiff's assertion, the ALJ relied on other record evidence in addition to the Plaintiff's daily activities in discounting Dr. Nelson's opinions.  As discussed previously, such other evidence included Dr. Nelson's own examination findings and the results of Dr. Arumugam's consultative examination.  (R. 22).  Even were that not the case, it is not improper for an ALJ to consider a claimant's daily activities when evaluating a medical opinion like that offered by Dr. Nelson.  *See* 20 C.F.R. § 404.1520c(c)(5) (stating that an ALJ may consider any other relevant factors "that tend to support or contradict a medical opinion"); *Wiginton v. Comm'r of Soc. Sec. Admin.*, 2021 WL 3684264, at *8–9 (N.D. Fla. Aug. 3, 2021) (finding that substantial evidence supported the ALJ's decision to discredit a medical opinion, in part, because it was inconsistent with the claimant's daily activities) (collecting cases), *report and recommendation adopted*, 2021 WL 3682717 (N.D. Fla. Aug. 18, 2021).

As for the Plaintiff's remaining contention that the ALJ did not "consider all of the other required factors in his evaluation of Dr. Nelson's opinion" (Doc. 33 at 13), this argument is premised on the old Regulations, which do not apply here.  And under the amended Regulations, the ALJ was only compelled to address the supportability and consistency factors to adequately bolster his decision, which he did.  *See, e.g.*, (R. 22) (noting the inconsistencies between Dr. Nelson's opinion and his own records, which goes to the supportability factor, and the conflicts between Dr. Nelson's opinion and Dr. Arumugam's examination, which goes to the consistency factor); *see also* 20 C.F.R. § 404.1520c(b)(2); *Freyhagen*, 2019 WL 4686800, at *2 (citation omitted).

11

B.

The Plaintiff's second claim—that the ALJ did not properly assess the Plaintiff's subjective complaints of pain and other symptoms—is governed by the "pain standard." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam). Under this standard, a claimant must show "(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from the condition or (3) that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain." *Id.* (quoting *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (per curiam)).

If a claimant meets the pain standard, the ALJ must then assess the intensity and persistence of the claimant's symptoms to determine how they restrict his capacity to work. 20 C.F.R. § 404.1529. The considerations relevant to this analysis include: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate his pain or other symptoms; (5) treatment (other than medication) the claimant receives or has received for relief of his pain or other symptoms; (6) any measures the claimant uses or has used to relieve his pain or other symptoms; and (7) other factors concerning the claimant's functional limitations due to pain or other symptoms. *Id.*

After evaluating "a claimant's complaints of pain, the ALJ may reject them as not creditable, and that determination will be reviewed [on appeal] for substantial

12

evidence." [5] *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992) (per curiam) (citing *Wilson v. Heckler*, 734 F.2d 513, 517 (11th Cir. 1984) (per curiam)).  The ALJ, however, "need not cite particular phrases or formulations" in performing this assessment, as long as the reviewing court can be satisfied that the ALJ "considered [the claimant's] medical condition as a whole." *Chatham v. Comm'r of Soc. Sec.*, 764 F. App'x 864, 868 (11th Cir. 2019) (per curiam) (internal quotation marks and citation omitted); *see also Stowe v. Soc. Sec. Admin., Comm'r*, ___ F. App'x ___, 2021 WL 2912477, at *4 (11th Cir. July 12, 2021) (per curiam) (explaining that if an ALJ does not identify specific and adequate reasons for rejecting a claimant's pain testimony, "the record must be obvious as to the [ALJ's] credibility finding") (citing *Foote v. Chater*, 67 F.3d 1553, 1561–62 (11th Cir. 1995) (per curiam)).  A reviewing court will not disturb a clearly articulated credibility finding made by an ALJ that is adequately bolstered by the evidence of record.  *Foote*, 67 F.3d at 1562 (citation omitted).

At the hearing, the Plaintiff testified that he suffers from progressively worse back pain despite having received various ameliorative treatments, including acupuncture, chiropractic care, physical therapy, nerve blocks, steroid injections, and pain medication patches.  (R. 36–37).  The Plaintiff further testified that the pain associated with his DISH condition begins in his thoracic spine and wraps around his

---

[5] On March 16, 2016, Social Security Ruling (SSR) 16-3p superseded SSR 96-7p.  *See* SSR 16-3p, 2016 WL 1119029, at *1 (Mar. 16, 2016).  SSR 16-3p eliminates the use of the term "credibility" and clarifies that "subjective symptom evaluation is not an examination of an individual's character."  *Id.*  The change in terminology, however, does not alter the substance of the Court's analysis.  *See Yangle v. Comm'r of Soc. Sec.*, 2020 WL 1329989, at *4 n.2 (M.D. Fla. Mar. 23, 2020).

ribs, making it difficult for him to breathe, and also significantly inhibits his ability to bend and twist, forces him to lie down for most of the day, and interferes with his sleep. (R. 38, 40, 45). In addition, the Plaintiff complained at that hearing of "off and on" knee pain; multi-joint pain possibly related to DISH; gout issues that occur three to four times per year, each lasting up to ten days; and kidney problems that have forced him to suffer through forty-seven kidney stones in the past eight years and four separate surgeries, each causing him great pain. (R. 42–43). Lastly, the Plaintiff told the ALJ that he required assistance with dressing, bathing, and completing household chores. (R. 39).

In his decision, the ALJ referenced the Eleventh Circuit's pain standard, along with his duty to account for all the Plaintiff's "symptoms and the extent to which th[o]se symptoms [could] reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the [applicable legal requirements]." (R. 19–20) (citing of 20 C.F.R. § 404.1529; SSR 16-3p, 2016 WL 1119029)). The ALJ also rendered an express credibility determination regarding the Plaintiff's subjective complaints, finding:

> the [Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms. However, the [Plaintiff's] statements concerning the intensity, persistence and limiting effects of [his] symptoms [were] not fully supported for the reasons explained in this decision.

(R. 20).

14

In support of this credibility finding, the ALJ went on to explain that the Plaintiff's allegations were inconsistent with the evidence presented at the hearing, his reported daily activities, his representations to medical personnel, and the objective evidence of record, "which generally show[ed] only minimal abnormality on examination." (R. 20–21). With respect to the Plaintiff's daily activities in particular, the ALJ cited the Plaintiff's own function report, in which he acknowledged that he drove, shopped, prepared meals, played shuffleboard, did household chores, and told his doctors that he was active. (R. 20–21, 190–92, 585, 592, 608, 612). The ALJ also pointed to the normal physical examinations of the Plaintiff, including those that demonstrated the Plaintiff had a normal gait, station, coordination, range of motion, and muscle tone and strength. (R. 21–22, 345, 455, 474–76, 513, 517, 587, 590, 594, 597, 602, 609–10, 614).

In addition, the ALJ highlighted the medical opinion of Dr. Arumugam that the Plaintiff did not suffer from any functional impairment. And he noted as well the findings of a state agency medical examiner, Dr. Aisha Bailey, who reviewed the Plaintiff's records in April 2018 as part of the appeals process and found that the Plaintiff could lift fifty pounds occasionally and twenty-five pounds frequently, could stand/walk for around six hours and sit about six hours in an eight-hour day, and did not require any postural restrictions. (R. 22, 79–80).

Despite this lengthy evidentiary recitation by the ALJ, the Plaintiff now attempts to convince the Court that it is insufficient because the ALJ failed to examine a number of the factors for evaluating the intensity, persistence, and limiting effects of

15

the Plaintiff's symptoms "and, instead, . . . focused primarily on the objective evidence" and the Plaintiff's daily activities.  (Doc. 33 at 23).  This contention is unavailing.  Contrary to the Plaintiff's assertions, an ALJ is charged with considering both a claimant's daily activities and "all of the evidence" in the record when assessing the intensity, persistence, and limiting effects of a claimant's symptoms.  20 C.F.R. § 404.1529; *Foote*, 67 F.3d at 1561–62.  The fact that the ALJ may not have addressed each factor explicitly in his decision is irrelevant, *see Chatham*, 764 F. App'x at 868, as even the Plaintiff concedes in his memorandum (Doc. 33 at 23).

In sum, the ALJ's analysis of the Plaintiff's medical records in connection with his evaluation of the Plaintiff's subjective complaints was thorough, and his subsequent credibility determination was supported by substantial evidence in the form of specific examples from the record that were inconsistent with the Plaintiff's reported symptoms.  As a result, the Court will not disturb the ALJ's resolution of this issue.  *Stowe*, 2021 WL 2912477, at *4 (declining to reverse the ALJ's credibility finding, noting that the ALJ pointed to inconsistencies between the claimant's reported symptoms and his physician's notes) (citing *Foote*, 67 F.3d at 1561–62).

## C.

The Plaintiff's final claim—that the Commissioner did not carry her burden of identifying other jobs in the national economy that the Plaintiff can perform—fails as well.  (Doc. 33 at 28).  As noted above, at step five of the sequential evaluation process, the burden of proof temporarily shifts to the Commissioner "to show that 'there is other work available in significant numbers in the national economy that the claimant

is able'" to engage in despite his impairments.  *Sampson*, 694 F. App'x at 734 (quoting *Jones*, 190 F.3d at 1228); *see also* 20 C.F.R. § 404.1560(c) ("[T]o support a finding that you are not disabled at this fifth step of the sequential evaluation process, we are responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that you can do.").

To satisfy this burden, the Commissioner may base her decision in whole or in part on information supplied by a VE.  20 C.F.R. § 404.1566(e); *Rivera-Cruzada v. Comm'r of Soc. Sec.*, 741 F. App'x 737, 739 (11th Cir. 2019) (per curiam) (citations omitted).  "A [VE] is an expert on the kinds of jobs an individual can perform based on his . . . capacity and impairments." *Phillips*, 357 F.3d at 1240.  If the ALJ utilizes a VE, the ALJ "will pose hypothetical question(s) to the [VE] to establish whether someone with the limitations that the ALJ has previously determined that the claimant has will be able to secure employment in the national economy." *Id.*

The ALJ must present an accurate hypothetical to the VE that accounts for all the claimant's restrictions.  *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1270 (11th Cir. 2007) (citation omitted).  When the ALJ properly rejects a claimant's purported impairments or limitations, however, the ALJ need not include those impairments or limitations in the hypothetical(s) presented to the VE.  *Brown v. Comm'r of Soc. Sec.*, 425 F. App'x 813, 818 (11th Cir. 2011) (per curiam) (citation omitted); *Crawford*, 363 F.3d at 1161.

Here, the ALJ asked the VE a hypothetical question at the hearing, which incorporated the Plaintiff's age, education, work experience, and RFC.  (R. 51–52).  In

17

response, the VE testified that there were three jobs available in significant numbers in the national economy that the Plaintiff could perform—specifically, assembly line worker, gate attendant, and parts cleaner. (R. 24, 51–52). The ALJ then relied on the VE's testimony in determining that the Plaintiff was "capable of making a successful adjustment to" other work and was therefore not disabled. (R. 24).

The Plaintiff's sole challenge to this finding is that the ALJ's hypothetical did not include the restrictions found by Dr. Nelson. As discussed previously, however, the ALJ properly concluded that Dr. Nelson's opinions were not persuasive, and that conclusion is supported by substantial evidence. Thus, the Court cannot find error in the ALJ's exclusion of Dr. Nelson's limitations from the hypothetical he posed to the VE. *See Carroll v. Soc. Sec. Admin., Comm'r*, 453 F. App'x 889, 894–95 (11th Cir. 2011) (per curiam).

IV.

For the foregoing reasons, it is hereby ORDERED:

1.      The Commissioner's decision is affirmed.

2.      The Clerk of Court is directed to enter Judgment in the Defendant's favor and to close the case.

SO ORDERED in Tampa, Florida this 30th day of September 2021.

HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

18

Copies to:
Counsel of record